```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
UNITED STATES OF AMERICA                            21 Cr. 123 (VB)
                                      :
    - v. -
                                      :
XAVIER ALEXANDER HAMILTON.
                                      :
--------------------------------------X
```

SENTENCING MEMORANDUM

Dated:    White Plains, New York
          March 11, 2022

                                        Federal Defenders of New York
                                        Benjamin Gold
                                        Attorney for Mr. Hamilton
                                        81 Main Street
                                        White Plains, NY  10601
                                        (914) 458-8128

To:  Damian Williams
     United States Attorney
     Southern District of New York
     One St. Andrew's Place
     New York, New York
     Attn:  Rushmi Bhaskaran
     Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, N.Y. 10601-4150
Tel: (914) 428-7124 Fax: (914) 948-5109

---

**David E. Patton**
*Executive Director
and Attorney-in-Chief*

*Southern District of New York
Jennifer L. Brown
Attorney-in-Charge*

March 11, 2022

The Honorable Vincent L. Briccetti
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY  10601

   Re: United States v. Xavier Alexander Hamilton
      21 CR 123 (VB)

Dear Honorable Briccetti:

  Xavier Alexander Hamilton (herein Mr. Hamilton) has always strived to help and please others.  As detailed herein, he constantly helps his family and friends and he is a valuable co-worker.  So when a long-time family "friend" asked Mr. Hamilton for help obtaining drugs, Mr. Hamilton agreed.  Unbeknownst to Mr. Hamilton, this "friend" was a confidential source working for law enforcement.  Also unbeknownst to Mr. Hamilton, the pills he acquired for the "friend" contained fentanyl.  While Mr. Hamilton's actions were illegal and merit punishment, a prison sentence is not necessary for this first time offender who had no idea he was involved with fentanyl and who has otherwise lived a law abiding life.  As such, I ask that Your Honor sentence Mr. Hamilton to a term of home detention, supervised release and community service.

### *Mr. Hamilton's Childhood and Education*

  Xavier Alexander Hamilton was born on March 10, 1993, in Manhattan, New York.  PSR ¶ 36.  He grew up in the Bronx in a loving and supportive household with his parents and siblings.  PSR ¶ 36, 37-39.  Mr. Hamilton's father, William Alexander Hamilton, worked for the NYPD as a detective, but has since retired and is now employed as an investigative consultant for the Administration for

| | |
|---|---|
| United States v. Xavier Alexander Hamilton | March 11, 2022 |
| Sentencing Submission | Page 2 |

Children's Services (ACS).  PSR ¶ 36.  Mr. Hamilton's mother, Alicia Darlyne Smith, was employed at Verizon.  PSR ¶ 37.

As a child, Mr. Hamilton enjoyed, and excelled at, sports – especially football.  PSR ¶ 36-37.  Mr. Hamilton graduated high school in 2011 and received a football scholarship which allowed him to attended ASA College in Brooklyn.  PSR ¶ 49-50.  ASA Enrollment Verification Notice (Exhibit A).  Unfortunately, while playing football for ASA, Mr. Hamilton injured his ankle and was unable to continue playing football.  PSR ¶ 37, 44, 50.  Mr. Hamilton lost his scholarship, causing him to drop out of college in March, 2013 at the age of eighteen.  *Id*. Mr. Hamilton re-enrolled in college (Manhattan Community College) in 2015, but dropped out after two semesters.  PSR ¶ 51.

*Mr. Hamilton as a Young Adult*

After college, Mr. Hamilton worked to support himself.  Initially, he was employed as a mentor to children as a "student liaison" with ACS (2012 through 2016).  PSR ¶ 53.  He next worked at Home Depot (2015), Fresh Direct (2016-2018) and Gramercy Produce (2018-2019).  PSR ¶ 53-57.  Since 2020, Mr. Hamilton has been employed as a driver for Lynx Logistics, a company that provides delivery services for Amazon.com.  PSR ¶ 57.  As detailed by Elliot S. Phipps, Mr. Hamilton's boss and the president of Lynx Logistics, Mr. Hamilton is an excellent employee who has excelled during the COVID-19 pandemic.  Elliot S. Phipps Letter (Attached as Exhibit B).   Mr. Phipps explains,

> Xavier has made a significant contribution to my company's success.  He started as Delivery Associate and quickly demonstrated an aptitude for accuracy and efficiency.  He is conscientious paying close attention to customer demands going to great lengths to exceed customer expectations.  Xavier started working for Lynx during the midst of the pandemic.  It was a challenging time because of high customer orders.  Xavier frequently took routes with a higher package count than the average driver.  He would complete his route and still have the capability of assisting other drivers in completing their

> deliveries. . . .  In over 30 years of executive management and business [sic] owner I consider Xavier one of my best hires.  *Id.*

Although he works full time, Mr. Hamilton spends a lot of time helping family members in need.  Mr. Hamilton's sister, Brittany Hamilton, has multiple sclerosis, which often renders her in need of assistance.  PSR ¶ 36, 38.  Mr. Hamilton is always eager to help.  *Id.*  As detailed in her letter to Your Honor,

> My brother Xavier has been helping me during this difficult time.  I have two children who depend on me to take care of them but with this most recent flare up I have to depend on Xavier to help with them. . . .  Xavier helps me with pick ups and drop offs and as well anything else I need.  I live in Jersey City[,] New Jersey and travel to Mount Sinai hospital for my care.  He is a vital part of mine and my children's life right now.  Since my diagnosis he has always found a way to help me and my boys out.  I don't know what I would do without him.  Brittany Hamilton Letter (Attached as Exhibit C).

Mr. Hamilton offers similar assistance to his mother and grandmother.  As detailed by his father, Mr. Hamilton assists his grandmother by "cleaning and doing odd jobs around her home. . .  Xavier often takes her grocery shopping, takes her to various medical appointments, and assists her in picking up prescription medications."  William Hamilton Letters (Attached as Exhibit D).[1]   He also is a big help to his mother, who explains,

> Xavier assists me bi-weekly with pick up or drop off for my doctor office appointments & around the house.  I also depend on him for night driving when my husband is not available.  I have Angina/High blood pressure & long hauler effects due to covid-19 and I Have been out on disability from work since February 2021.  Since testing positive for covid I suffer from extremely bad headaches so I see my neurologist once or twice a month for nerve

---

[1] William Hamilton has written two letters to Your Honor.  The first was written in November prior to Mr. Hamilton's plea.  The second was written this month and has more biographical information.  Both letters are attached as Exhibit D.

> block injections to my head & follow-ups. I have constant fatigue, popping/cracking at the base of my neck, painful joints at times and brain fox. With Xavier being an athlete most of his life; he has knowledge of physical therapy and helps me with stretching etc. Xavier is a tremendous help to me both mentally & physically on a consistent basis. Alicia Hamilton Letters (Attached as Exhibit E).[2]

Mr. Hamilton shows similar devotion and service towards his friends. His friend Edgar Perez explains that, after dropping out of college, he was at a low point in his life until Mr. Hamilton stepped in, "helped me find motivation . . . reminded me to fight through adversity" and "challenged me to become a better version of myself." Edgar Perez Letter (Attached as Exhibit F). According to Mr. Perez, "Xavier [Hamilton] is the type of friend to give you the shirt off his back." *Id*. Another friend, Martins Frye, describes Mr. Hamilton as "a very caring, passionate, loving, and reliable person." Martin Frye Letter (Attached as Exhibit G). Mr. Frye recalls an incident where, after arriving late to the boat terminal, he found himself stranded in Bermuda and separated from his family, who had made it back onto the now departed cruise ship. *Id*. As explained in Mr. Frye's letter, he called Mr. Hamilton, who immediately "stopped what he was doing, told me not to worry and then proceeded to help me find a way. While he was booking my plane ticket, he also made sure my wife was safe, and picked us up when we made it back to the states." *Id*. Similar sentiments were made by many family members and friends, including:

- Jesus Rivera (family friend and Godfather) (Attached as Exhibit H)
- Orena Sutherland (girlfriend) (Attached as Exhibit I)
- Rodney Lewis (family friend) (Attached as Exhibit J).
- Sharon Brooks (family friend) (Attached as Exhibit K).

---

[2] Alicia Hamilton has also written two letters to Your Honor. The first was written in November prior to Mr. Hamilton's plea, the second was written in March and has more biographical information. Both letters are attached in Exhibit E.

- Wendy Lewis (friend and neighbor) (Attached as Exhibit L)
- Roy Ruland (family friend) (Attached as Exhibit M)
- Octavius Hamilton (brother) (Attached as Exhibit N)

*The Offense and Acceptance of Responsibility*

On January 5, 2021, a family "friend" who Mr. Hamilton has known for years called Mr. Hamilton's cell phone and asked for drugs, specifically 2000 blue M-30 pills, which Mr. Hamilton believed was Percocet.³ PSR ¶ 16. This "friend", who was working with law enforcement as a confidential source, knew that Mr. Hamilton had a friend who could supply these pills. PSR ¶ 16. Mr. Hamilton agreed to help the confidential course, obtained the pills, and, on January 6, 2021, Mr. Hamilton attempted to supply the pills to the friend/confidential source. PSR ¶ 9. Mr. Hamilton was promptly arrested. *Id*.

Mr. Hamilton appeared in federal court on January 6, 2021. PSR ¶ 6. He pleaded guilty ten months later. Mr. Hamilton has been supervised by Pretrial Services since his arrest in January, 2021. *Id*. He has maintained steady employment and, with the exception of one misunderstanding about whether his Pretrial supervision had been transferred to Probation, Mr. Hamilton has been fully compliant with the terms of his release. PSR ¶ 6. Mr. Hamilton has also expressed significant remorse. PSR ¶ 17. *See* William Hamilton Letters (Exhibit D) and Alicia Hamilton Letters (Exhibit E).

*Guidelines*

Mr. Hamilton pleaded guilty pursuant to a plea agreement. Under the terms of the plea agreement, Mr. Hamilton's Guidelines are 37 to 46 months. PSR ¶ 4. The plea agreement gives Mr. Hamilton credit for complying with the terms of 18

---

³ The PSR, quoting language from the Complaint, indicates that the confidential source had asked Mr. Hamilton for fentanyl pills, but recordings of the conversations confirm that the CS did not specifically ask for fentanyl and instead asked for blue M-30 pills.

U.S.C. § 3553(f), which means that the five-year mandatory minimum does not apply to Mr. Hamilton. PSR ¶ 63.

### *The Most Appropriate Sentence: Home Detention, Community Service and Post-Release Supervision*

As Your Honor is well aware, in selecting a sentence this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." *Id*. In *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), the Second Circuit explained that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, **it must choose the lower sentence**. *See id.* at 142 (observing that where a guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence).

In this case, as recognized by Probation, Mr. Hamilton is worthy of a significant variance. PSR P. 19. This is Mr. Hamilton's first arrest and, while his conduct was unlawful, Mr. Hamilton had no idea that the pills he planned to sell contained fentanyl. PSR ¶ 16-17. Moreover, Mr. Hamilton's history and characteristics suggest that he will not re-offend and that incarceration is not necessary.

A. <u>The Nature and Circumstances of Mr. Hamilton's Unlawful Activity Do Not Compel a Prison Sentence.</u>

At the time of his arrest, Mr. Hamilton was working full time delivering packages in the midst of the COVID-19 pandemic. A family "friend" Mr. Hamilton had known for years reached out to Mr. Hamilton and asked for blue M-30 pills. Mr. Hamilton knew someone who had a supply of such pills, which he believed were

underground or "street" Percocets.[4] Mr. Hamilton wanted to help his friend, and was attracted to the idea of making easy money. He agreed to arrange the sale, picked up the pills and, the following day, attempted to sell them to the buyer/"friend." A laboratory analysis later demonstrated that the pills contained fentanyl.

While Mr. Hamilton knew that the pills were illegal, he did not know that they contained fentanyl. PSR ¶ 16. Nevertheless, Mr. Hamilton is liable for the sale because "the law is settled that a defendant need not know the exact nature of a drug in his possession to violate [the Controlled Substance Act]." *United States v. Abdulle*, 564 F.3d 119, 125 (2d Cir. 2009).

While not a legal defense, it is significant that Mr. Hamilton's "mens rea" was to sell "street" Percocet rather than fentanyl. As Your Honor is well aware, fentanyl is an extremely deadly substance that is far more potent and lethal than traditional opioids.[5] Mr. Hamilton did not realize he was handling such a dangerous drug. As he explained to Probation, "he would have never obtained" the pills if he had realized what they contained. PSR ¶ 16. This is mitigating – and justifies a sentencing variance – because it shows that he was not *knowingly* trying to sell the extraordinarily dangerous substance.

B.  Mr. Hamilton's History and Characteristics, Including his Impressive Work History and His Devotion to his Family, are Grounds for a Significant Variance.

It has long been recognized that a defendant's history and characteristics is always "a central consideration in the fashioning of a just sentence." *United States*

---

[4] Percocet is a prescription pain medication that contain an opioid (oxycodone) that is mixed with acetaminophen. https://www.webmd.com/drugs/2/drug-7277/percocet-oral/details. (last assessed on March 10, 2022).

[5] *See What is an Opioid?* Department of Justice. https://www.justice.gov/opioidawareness/opioid-facts (last accessed on March 10, 2022).

*v. Merritt*, 988 F.2d 1298, 1307 (2d Cir. 1993).  As Judge Jed S. Rakoff so eloquently explained,

> [S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance.  This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'

*United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006); accord *Gall v. United States*, 552 U.S. 38, 52, 128 S. Ct. 586, 598 (2007) ("'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue'" (quoting *Koon v. United States*, 518 U.S. 81, 113, 116 S. Ct. 2035, 2053 (1996)); *see also* 18 U.S.C. § 3661; U.S.S.G. §1B1.4 (sentencing court not limited with respect to the information concerning a defendant's background, character and conduct that it may consider for the purpose of imposing an appropriate sentence).

      While Mr. Hamilton certainly should not have tried to sell the pills, his devotion to his family and friends is significant.  Attached to this submission are thirteen letters from various friends and family (Exhibits B-N), all attesting to Mr. Hamilton's good character and his general selflessness and his willingness to help others.  This selfless devotion to others is grounds for a significant variance.  *See Rita v. United States,* 551 U.S. 338, 364-365 (2007) (Stevens, J., concurring) ("Matters such as . . . charitable, or public service are not ordinarily considered under the Guidelines [but are] matters that § 3553(a) authorize the sentencing judge to consider."); *United States v. Serafini*, 233 F.3d 758, 773, 774 (3d Cir. 2000)(downward departure appropriate given the defendant's "generosity with his

time as well as his money."); *United States v. Tomko*, 562 F.3d 558, 572 (3d Cir. 2009) (affirming variance to a sentence of probation due largely to the defendants "exceptional" charitable acts and good works); *United States v. Thurston*, 544 F.3d 22, 26 (1st Cir. 2008) (affirming a sentence of three months incarceration and 24 months supervised release from a recommended guideline sentence of 60 months imprisonment based in part on the defendant's "charitable work, community service, generosity with time, and spiritual support and assistance to others"); See other cases upholding downward departure for good works: *United States v. Ali*, 508 F.3d 136, 150 & n.19 (3d Cir 2007); *United States v. Cooper*, 394 F.3d 172, 177, 178 (3d Cir. 2005); *United States v. Woods*, 159 F.3d 1132, 1136 (8th Cir. 1998).

Additionally, Mr. Hamilton's excellent work history merits consideration. As an adult, Mr. Hamilton has worked a number of jobs and he contributed to society by delivering packages in the midst of the COVID-19 pandemic. *See* Elliot S. Phipps Letter (Exhibit B). A sentence of probation would allow him to continue working, to continue to devote his time to his family, and would enable him to give back to his community if Your Honor imposed a requirement of community service.

Finally, Mr. Hamilton's remorse – as demonstrated by his plea, his multiple apologies and his successful and honest "safety valve" proffer – are worthy of consideration and are separate grounds for a variance.

C.  <u>Home Detention and Post Release Supervision would Provide Sufficient Deterrence and Would Not Create an *Unwarranted* Sentencing Disparity</u>

Mr. Hamilton has been specifically deterred. Because of his conduct, Mr. Hamilton was arrested and has been under the supervision of PreTrial Services for over a year. Mr. Hamilton is extremely remorseful and is understandably furious that he has put himself in the situation where he may be separated from his family and sent to prison. Research shows that a more severe sentence does not lead to greater specific deterrence for individual defendants. <u>See</u> The Honorable Peggy Fulton Hora & Theodore Stalcup, *Drug Treatment Courts in the Twenty-First Century: The Evolution of the Revolution in Problem-Solving Courts*, 42 GA. L. REV.

United States v. Xavier Alexander Hamilton                                    March 11, 2022
Sentencing Submission                                                                                        Page 10

717, 724 (2008). The same can be said for general deterrence. Studies have proven that more severe sentences do not result in greater general deterrence. Michael Tonry, Purposes and Functions of Sentencing, 34 CRIME AND JUSTICE REVIEW: A REVIEW OF RESEARCH 28-29 (2006) ("[I]ncreases in severity of punishment do not yield significant (if any) marginal deterrent effects. . . . Three national Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."). It is the certainty of being prosecuted rather than the severity of punishment that deters crime. See Nat'l Inst. of Just., Five Things About Deterrence, Jun. 6, 2016. The fact that Mr. Hamilton was arrested, prosecuted, convicted and sentenced, will provide sufficient general deterrence; a term of incarceration is not required for an individual who, like Mr. Hamilton, has done well on pre-trial release and has never before been incarcerated or even accused of a crime.

      While this proposed sentence would avoid incarceration, home detention, community service and post-release supervision is a significant punishment for Mr. Hamilton, a first time offender who has never before been incarcerated or subjected to the criminal justice system. Due to his unlawful actions, Mr. Hamilton will forever be brandished a "criminal" and will face a lifetime of the "collateral" consequences relating to his conviction. This – combined with home detention, mandatory community service, and supervised release – constitute sufficient punishment. *See United States v. Mateo*, 299 F. Supp.2d 201, 210 (S.D.N.Y. 2004) (beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal convictions, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement.).

| | |
|---|---:|
| United States v. Xavier Alexander Hamilton | March 11, 2022 |
| Sentencing Submission | Page 11 |

\* \* \*

There is nothing to be gained by a draconian sentence in this case. For the reasons set forth above, I respectfully ask that the Court to impose a non-incarceratory sentence.

Thank you for your consideration of this request.

                                                      Respectfully,

                                                     //s

                                                   Benjamin Gold
                                                   Assistant Federal Defender

cc:    Assistant U.S. Attorney Rushmi Bhaskaran